FILED
OCT 26 2012
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| v. | § § | MO-12-CR-235 |
| VICTOR MANUEL CARDIEL-GONZALEZ,<br>Defendant. | § § § | |

## MEMORANDUM OPINION DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT

Before the Court is Defendant's Amended Motion to Dismiss Indictment (Doc. 23) and the United States' Response in Opposition Defendant's Amended Motion to Dismiss Indictment. (Doc. 24). On September 26, 2012, the Court held a hearing on Defendant's original Motion to Dismiss Indictment (Doc. 18). The hearing was continued until October 18, 2012, to allow the parties to brief the issue of timely recantation. (Doc. 22). On October 18, 2012, the Court resumed the previous hearing and orally denied Defendant's Motion to Dismiss Indictment. The Court's Memorandum Opinion now issues to expand on the reasons provided in its oral order denying Defendant's motion.

### Procedural Background

Defendant is charged with one count of violating 8 U.S.C. § 1326(a): Unlawful reentry of removed aliens.

In his motion, Defendant contended he was not accorded due process during his removal proceedings pursuant to an Administrative Order of Removal, which caused prejudice. Defendant also contested the prior conviction that served as the basis of his removal. Specifically, Defendant alleged the proceedings were deficient in the following manners:

1

1. Defendant was not read his rights.

2. Neither the Notice of Intent to Issue an Administrative Order of Removal and the Order itself were translated for Defendant.

3. Defendant was not notified of his right to counsel under the Sixth Amendment.

4. Defendant was not advised of his right to appeal.

5. Defendant was not advised of his right to go before an immigration judge.

Finally, Defendant claimed he suffered prejudice because he would have elected to fight the deportation before an immigration judge and seek a voluntary return had he known his rights. He claimed he would have been eligible for a Voluntary Departure under 8 U.S.C. 1229c(a)(1), which, in turn, would not have prohibited him from attempt to return because his wife is a United States citizen, as are his two children.

At the first motion to dismiss the indictment hearing held on September 26, 2012, Defendant also raised an issue of timely recantation of his false claim to citizenship charge—a conviction that led to the reinstatement of his prior removal order. The hearing was continued for several weeks to allow both parties to brief the issue. In his amended motion, Defendant contends that he withdrew his false claim to citizenship in a timely manner, which should have resulted in no additional charges against Defendant and should not have marred his ability to return to the United States. The Government responded asserting that none of the Defendant's factual claims on this issue were supported by the record. Specifically, the Government contends Defendant did not timely recant because he retracted his statement only after he had been confronted with documents displaying his true name by the immigration officials. Additionally, Defendant later pleaded guilty to the false claim to citizenship in front of a United States Magistrate Judge while represented by counsel.

At the second hearing, Defendant withdrew all of his previous claims leaving the timely

2

recantation defense as the sole issue before the Court. In an abundance of caution, the Court addressed each of the original issues in its oral order as well as the issue of timely recantation.

## Factual Background

Defendant Victor Manuel Cardiel-Gonzalez is a native and citizen of Mexico by birth. Defendant was born in Guadalupe Victoria, Durango, Mexico on October 1, 1984. Defendant was brought into the United States when he was approximately one year old. His family resided in Cleburne, Texas.

On April 12, 2005, Defendant was apprehended by immigration authorities after serving a sentence for driving while intoxicated. Defendant requested and was granted a voluntary return to Mexico at that time. (Court's Ex. 1, p. 17).

On July 2, 2005, Defendant attempted to return to the United States through the Del Rio, Texas, Port of Entry through the pedestrian walkway. (Court's Ex. 1, pp. 60–61). He was stopped at the border crossing where he made a false statement concerning his citizenship to a Customs and Border Protection officer. (*Id.* at 61). He claimed he was a United States citizen when he was in fact a citizen of Mexico and gave a fictitious name. (*Id.*). The officer first asked Defendant to produce identification, which Defendant claimed he was unable to do. (*Id.*). The agent then searched Defendant's wallet and discovered an ID with a different name than the one Defendant had just provided. (*Id.*). Defendant was brought to Passport Control for a secondary interview. (Court's Ex. 1, p. 61). During the secondary interview, Defendant confessed that he was not a United States citizen and provided his real name. (*Id.*). He was then prosecuted for making a false representation in the Del Rio Division of the Western District of Texas where he was represented by Assistant United States Public Defender Elizabeth Rogers. (*Id.* at 57, 59). He pleaded guilty to the charge

3

before the magistrate judge on July 8, 2005, and was sentenced to a 60-day term of imprisonment. (*Id.* at 57).

Defendant was issued his Notice and Order of an Expedited Removal in Del Rio, Texas on July 2, 2005. (Court's Ex. 1, pp. 6, 9). The Court notes that Defendant was represented by Elizabeth Rogers around that time. (*See* Court's Ex. 1, p. 57). Defendant was removed to Mexico via Eagle Pass, Texas, on August 30, 2005. (*Id.* at 6). He returned to the United States without permission at an unknown date.

Defendant was stopped by Odessa Police Department (OPD) on August 15, 2012. (Doc. 1). OPD contacted the Department of Homeland Security (DHS) and Immigration and Customs Enforcement (ICE) to inquire about Defendant's immigration status. (*Id.*). OPD was informed that Defendant had previously been removed from the United States to Mexico. (*Id.*). On August 16, 2012, Defendant was released into ICE's custody and transported to the Midland office for processing. There, Immigration Enforcement Agent Israel Crespo explained Defendant his rights and his right to contest the determination in Service Form I-871 (Rev. 08/01/07). (Court's Ex. 1, pp. 1, 17). The form also explained that Defendant did not have the right to a hearing before an immigration judge. (*Id.* at 1). Defendant read the form and claimed he understood it, but refused to sign the form. (*Id.* at 1, 17). Defendant's fingerprints were then matched through immigration databases which matched administrative and FBI numbers linked to Defendant. (Doc. 1).

Defendant was issued a Notice of Intent/Decision to Reinstate Prior Order using Service Form I-871 on August 16, 2012, pending prosecution for violation of Title 8, United States Code, Section 1326.

## Applicable Law

To collaterally challenge a prior deportation in a motion to dismiss a 1326(b) charge, the alien bears the burden of proving:

*First*: The alien exhausted his administrative remedies that may have been available to seek relief against the order;

*Second*: The deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review;

*Third*: The entry of the order was fundamentally unfair; and

*Fourth*: The procedural deficiencies caused the alien actual prejudice.

*United States v. Morales-Cruz*, 382 F. App'x 399, 400 (5th Cir. 2010) (not selected for publication); see 8 U.S.C. § 1326(d)(1); *United States v. Lopez-Ortiz*, 313 F.3d 225, 229 (5th Cir. 2002).[1] It is the Defendant's burden to establish all of these elements, and if he fails to establish any one element there is no need for the Court to consider the others. *United States v. Encarnacion-Galvez*, 964 F.2d 402, 406 (5th Cir. 1992).

As to the third element, the Fifth Circuit has noted that "[f]undamental fairness is a question of procedure." *Lopez-Ortiz*, 313 F.3d at 230.

> Removal hearings are civil proceedings, not criminal; therefore, procedural protections accorded an alien in a removal proceedings are less stringent than those available to a criminal defendant. The Supreme Court [in *United States v. Kwong*

---

[1] In his motion, Defendant cites an early Fifth Circuit case, *United States v. Lopez-Vasquez*, 227 F.3d 476 (5th Cir. 2000), which only has a three-part test, and is slightly different from the one found in 8 U.S.C. § 1326(d)—the statutory test was codified after the *Lopez-Vasquez* opinion. *See Lopez-Ortiz*, 313 F.3d at 229. In *Lopez-Vasquez*, the three elements an alien must prove are: (1) the prior hearing was fundamentally unfair, (2) the hearing effectively eliminated the right of the aline to challenge the hearing by means of judicial review of the order, and (3) the procedural deficiencies cause the alien actual prejudice. *Lopez-Vasquez*, 227 F.3d at 483. The Fifth Circuit has combined these two tests into the single four-part test noted above. *Morales-Cruz*, 382 F. App'x at 400. Defendant claims to have met each of the three factors noted in *Lopez-Vasquez*.

5

> *Hai Chew*, 344 U.S. 590, 597–98 (1953)] has stated that due process requires that an alien who faces deportation be provided (1) notice of the charges against him, (2) a hearing before an executive or administrative tribunal, and (3) a fair opportunity to be heard.

*Id.* (citations omitted).

## DISCUSSION

Defendant has not fulfilled all four requirements to attack his prior deportation. In fact, he has not met even one requirement.

### 1. Exhaustion of Administrative Remedies

Defendant has not asserted that he exhausted his administrative remedies. It appears from Defendant's A-file that he did not contest the August 30, 2005 removal order. By regulation, he was not permitted to appeal the removal order because he was neither admitted nor paroled into the United States at the time he was found to be inadmissible. *See* 8 C.F.R. § 1235.3(b)(2(ii).

### 2. Deprivation of Judicial Review

Defendant was given the opportunity to contest the removal order, but chose not to contest it. He was advised of his rights during the secondary interview. (Court's Ex. 1, p. 11–13). Again, because of Defendant's immigration status, he was not permitted to appeal the order.

### 3. Fundamental Fairness

Fifth Circuit precedent only requires three elements for a removal proceeding, such as this, to be considered fundamentally fair:

(1) Notice of the charges against him,

(2) A hearing before an executive or administrative tribunal, and

(3) A fair opportunity to be heard.

*Lopez-Ortiz*, 313 F.3d at 230. Defendant received all three elements.

Defendant was provided with a Notice and Order of Expedited Removal and Notice to Alien Ordered Removed/Departure Verification, both of which explained the factual reasons for his removal and the findings of administrator in his case. (Court's Ex. 1, p. 6, 9). Defendant also received a hearing before Rodrigo Ramon, a Customs and Border Protection Officer, on July 2, 2005, where he was given the opportunity to explain his case and ask any questions. (*Id.* at 11–14).

Therefore, Defendant's prior removal hearing was not fundamentally unfair under Fifth Circuit standards. *See Lopez-Ortiz*, 313 F.3d at 230.

**4. Actual Prejudice**

Defendant cannot establish prejudice on any of his alleged deficiencies as none of Defendant's claims regarding procedural deficiencies are supported by the facts.

First, Defendant claims he was not read his rights. However, several documents—including ones bearing Defendant's signature—indicate to the contrary. (Court's Ex. 1, p. 11–14, 57, 62).

Second, Defendant claims the Notice of Intent to Issue an Expedited order of Removal and the Order itself were not translated. However, the Defendant speaks English. A the previous motion to dismiss hearing, Defendant claimed he did not need a translator. At the time of his removal he also spoke English, as indicated on one of the documents bearing his signature. (*Id.* at 11–14).

Defendant claims he was not notified of his right to counsel under the Sixth Amendment during the prosecution of his false claim to citizenship charge that preceded his removal. However, Defendant was represented by counsel when he was prosecuted for the illegal entry by false representation charge. (*Id.* at 57). He ultimately pleaded guilty to the charge before a magistrate judge in Del Rio. (*Id.*).

7

Defendant next claims he was not advised of his right to appeal. But he was given the opportunity to contest his deportation and elected to not to pursue that option. He was not eligible to appeal the expedited removal order, though, under 8 C.F.R. § 1235.3(B)(2)(ii), because he was not admitted or paroled into the United States prior to being found inadmissible.

Defendant claims he was not advised of his right to go before an immigration judge, however, he was explained his rights during his secondary interview with Customs and Border Protection Officer Rodrigo Ramon on July 2, 2005. Defendant has not contended he actually had the right to go before an immigration officer at that time, because he was not eligible to go before an immigration judge in this case at all. Aliens stopped at the port of entry who have not been admitted or paroled into the United States and are then found to be inadmissible are not entitled to go before an immigration judge or to appeal an expedited removal order. 8 C.F.R. § 1235.3(B)(2)(ii). Therefore, Defendant cannot show prejudice on this claim either as he was not admitted or paroled into the United States at the time he was stopped and found to be inadmissible.

Defendant claims on page 2 of his Motion to Dismiss Indictment that he "was denied the opportunity to obtain counsel and apply for voluntary departure before an immigration judge. As a result, the Expedited Order of Removal that was entered against him, resulted in causing permanent harm to his ability to adjust his status as a Legal Permanent Residence via his US Citizen wife." (Doc. 18). Each of these claims is meritless.

Defendant was allowed to voluntarily return to Mexico the first time he was approached by ICE. Defendant applied for voluntary return and it was granted that same day on April 12, 2005. (Court's Ex. 1, p. 17). Shortly after his voluntary return, Defendant attempted to gain entry to the United States by making a false claim to citizenship. (*Id.*). Because Defendant had previously been

permitted to voluntarily return to Mexico, he was unable to seek a voluntary departure the second time around. *See* 8 U.S.C. § 1229c(c); *see also* 8 U.S.C. § 1182(a)(6)(C)(ii).

When he returned later without permission, he was represented by counsel Elizabeth Rogers, an Assistant United States Public Defender, prior to pleading guilty to the offense that made him eligible once again for removal a second time. (*Id.* at 57, 59).

Finally, following the conviction, the Department of Homeland Security decided to reinstate the prior removal order, which was executed August 30, 2005. (*Id.* at 6, 9). Because he was not admitted or paroled into the United States before he was found to be inadmissible, Defendant had no right to go before an immigration judge or appeal his case. *See* 8 C.F.R. § 1235.3(B)(2)(ii).

Title 8 U.S.C. § 1229c(c) states: "The Attorney General shall not permit an alien to depart voluntarily under this section if the alien was previously permitted to so depart after having been found inadmissible under section 1182(a)(6)(A) of this title." Section 1182 is the codified section of section 212(a)(6)(C)(ii) of the Immigration and Nationality Act (Section 212 being the Act's internal citation)—the section Defendant was found inadmissible under in July of 2005. (Court's Ex. 1, p. 9); *see* 8 U.S.C. §§ 1229c(c), 1182(a)(6)(A). Therefore, Defendant would not have been eligible to voluntarily depart in August of 2005 as he claims he would.

Accordingly, Defendant cannot establish the existence of any prejudice on these claims.

### 5. Timely Recantation Issue

At the first motion to dismiss hearing, Defendant raised for the first time the issue of timely recantation. The Court continued the hearing to allow both parties to brief the issue for the Court. In his Amended Motion to Dismiss, Defendant claimed he timely recanted his false representation concerning his citizenship, which, he contends, should not have resulted in the conviction that led

9

to his deportation. Defendant cites Board of Immigration Appeals cases from the 1960's and 1970's in support of his contention, however, they do not actually support the relief he seeks nor do they match the facts of his case.

First, the Court notes that the purpose of Defendant's motion is to attack his prior deportation which he claims was unfair and in violation of his rights. However, none of the immigration cases or the Ninth Circuit case Defendant cites involve attacking the deportation years later and raising the defense of timely recantation for the first time before a United States District Court. Rather, each of those cases began immediately following the false statement or representation by challenging the removal orders and exhausting their administrative remedies before petitioning for review from the circuit courts. While Defendant, here, did not have the right to an appeal or to go before an immigration judge, he did have the option to contest the removal and explain his defense of timely recantation to the administrator listening to his case. (Court's Ex. 1, pp. 11–14 ). Defendant elected to waive that right and did not raise any defenses at that time. Thus, he did not exhaust the one administrative remedy he had available. Also, as explained previously, Defendant's prior removal proceedings were fair. He was given the opportunity to be heard and to raise such arguments at that time, but did not. But the Court finds Defendant fails to meet the prejudice prong because he cannot establish that even if Defendant had raised the timely recantation defense at that time, he would have prevailed on such a defense. The Court finds his retraction was neither timely nor voluntary.

The main case Defendant cites in support of his argument is *Matter of —*, 9 I. & N., Dec. 118 (BIA 1960). In *Matter of —*, an alien claimed to be a United States citizen under oath to an immigration officer at an international airport in San Juan, Puerto Rico; however, prior to the completion of that statement he volunteered that he had entered the United States unlawfully.

10

Factually, this case is different in a several important ways. First, in *Matter of —*, the alien was already present in the United States and had been for some time at the time he made his statement. Defendant, here, was not admitted at the time he made the false representation. Second, and more importantly, in *Matter of —*, the alien retracted his statement before completion of the statement. Here, Defendant did not make an official statement under oath falsely claiming to be a United States citizen. Instead, as Defendant pointed out at the hearing, he only made a representation to the Customs and Border Protection Officer which was not made under oath. Defendant has cited no case law indicating that the doctrine of timely recantation applies to false representations, but it does appear that the same standard applies; however, the Fifth Circuit has only addressed the timely recantation issue in the context of a statement made under oath at a hearing. Third, Defendant did not timely or voluntarily recant because Defendant confessed only after he was confronted with evidence of his falsity when the Border officer found an ID on Defendant's person with a different name than the one he had given. (Court's Ex. 1, pp. 60–61). Defendant was then detained and brought in for a secondary interview. (*Id.*). It was not until this second interview shortly thereafter that Defendant retracted his statement. (*Id.*).

The Fifth Circuit has discussed issue of timely recantation once, but there are two factual differences that should be noted. *Noveron-Rodriguez v. Holder*, 375 F. App'x 433 (5th Cir. 2010) (not selected for publication). First, *Noveron-Rodriguez* concerned a false statement made under oath at a hearing before an immigration judge and not a representation made to a Border officer. Second, the length of time between the first and second hearing was seven months rather than a few hours.

In *Noveron-Rodriguez*, the Fifth Circuit declined to extend the holding of *Matter of —* to a

11

situation where the alien attempted to illegally gain entry to the United States by making a false representation at the border, but then retracted it at the second hearing, which was seven months later. *Noveron-Rodriguez*, 375 F. App'x at 435. There, the Fifth Circuit stated:

> This case is distinguishable from *Matter of —*, because Noveron-Rodriguez did not correct his false statements during the same hearing at which they were made; he corrected them approximately seven months later at the next hearing. He corrected some of his statements only after cross-examination by the Department of Homeland Security.... [H]is retraction was not voluntary because he had reason to believe that the [immigration judge] would discover his use of a false Social Security number on the tax returns he submitted in support of his application.

*Id.* Other circuits have considered the doctrine of timely recantation in the context of false representations.

The Third Circuit addressed the issue of timely recantation of a false representation concerning citizenship in a case similar to that of Defendant. *See Angeles-Robledo v. Attorney General of U.S.*, 183 F. App'x 159, 161–62 (3rd Cir. 2006) (not selected for publication). There, an illegal alien who had been residing in the United States for some time, returned to Mexico for a short visit. When attempting to return to the United States, she was questioned by the Border Patrol. She initially claimed she was a United States citizen, which was not true. Upon further questioning, she retracted her claim. The alien raised the defense of timely recantation based on the fact that she did not make the claim under oath and did so in a timely manner. The Board of Immigration Appeals disagreed because the alien did not recant her claim until the second interview and the recantation came after the alien had been confronted with third-party evidence of her falsity; namely, her traveling companion informed Border Patrol that she was not a United States citizen.

The situation Defendant faces is similar to *Angeles-Robledo*. Defendant did not make a statement under oath; he merely made a representation to the Border officer. Second, he only

12

retracted his claim at the outset of the second interview after he was confronted with evidence of his falsity—his ID card. (Court's Ex. 1, pp. 60–61).

The Second Circuit has noted that "[a]n alien's timely and voluntary retraction of his false statement may serve to excuse the misrepresentation, but the retraction may not simply be in response to the actual or imminent exposure of his falsehood." *Rahman v. Mukasey*, 272 F. App'x 35, 39 (2nd Cir. 2008) (not selected for publication). The Ninth Circuit states that "withdrawal of false testimony after [an alien] knows it will not deceive is not a voluntary and timely recantation." *Oropeza v. Holder*, 402 F. App'x 244 (9th Cir. 2010) (not selected for publication). Here, Defendant's retraction came after exposure to his false claim when he likely knew it would not deceive the officer. (Court's Ex. 1, p. 60–61).

Accordingly, the Court denies Defendant's motion on this basis, as well. First, Defendant's retraction was not voluntary. Defendant only retracted his statement after he was confronted with documents that contradicted his representation that he was a United States citizen by the Border officer and knew his false representation would likely be discovered. Second, his retraction was not timely. He made his complete representation to the Border officer and did not retract until the secondary interview.

## CONCLUSION

Therefore, the Court denies Defendant's amended motion to dismiss the indictment. (Doc. 23).

**It is so ordered.**
**Signed this 26 day of October, 2012.**

Robert Junell
United States District Judge

13